is number 05-1542 Dow Agrosciences v. Crompton Corp. Dow Agrosciences v. Crompton Corp. Before we begin, counsel, I think there's been a request to use visual aids at oral argument and there's been an objection to a part of those visual aids. There's no objection to the visual aids which reproduce the material at page 130 of the joint appendix, but there is an objection to the drawings of the structures of the various compounds. And it does appear, and correct me if I'm wrong, that that is material, that drawing there that's been submitted was not in the record below. So I think what we'll do is we'll simply go with, if you want to use it as a visual aid, Mr. Grandinetti, you can use the claim chart, but I think we will forego the other one. Thank you, Your Honor. I was going to suggest that the reason the other one exists is the other day when I was here checking in with the clerk and that, I said the rule allows for a chalkboard, and I didn't see it. And without a chalkboard, I thought I would just have that aid made. What I will do, if the formulas are necessary, if the court doesn't mind, is I will just hand draw any particular formula that we may need. You know, if it becomes an issue. It may not be. Okay, we'll go on that basis. But, again, you can start whenever you're ready. I'm ready. And I just want to confirm, you're only, this is a bit unusual, I want to make sure I have this correct, you're asking for five minutes of main argument and ten minutes of rebuttal, is that correct? With the court's permission, we didn't file a reply brief, and there were, what I believe, are two new issues raised in the response brief, which I would like to address. And I also have one matter of errata that I'd like to address. No, you can, you know, you can apportion your time any way you want, but it's just, I was just, I wanted to make sure. You're only allowed to rebut an argument that's made by the other side, so you run the risk of being a little sandbag in what you'll be able to do with your ten minutes of time. I'm a little aware of that, but. Just wanted to make certain you knew. I am aware of that. What the lawnmower looked like. Could be a short argument. Well, for the most part, I think the briefs did cover everything, but we'll see where it goes. So you want to stick with that, Mr. Grandin? Five minutes for your opening and ten minutes for rebuttal. With court's permission? No, that's your choice. I just want to make sure that that's what you want to do. I do. Okay, fine. Go ahead, then, whenever you're ready. Okay, the first matter of errata is, we noticed late, of course, that there was a tepid referral error on the footnote at 126 on page 50 of our brief. We left the word not out of it. It should say the doctrine of equivalence is not proper with affirmative defense. And we just found that out. We'll submit it properly. But I just wanted to point it out. The response brief, as I said, raised two issues. One goes to the word contains. The second one goes to the issue of venue. The response brief suggests that our argument that the court's Markman language incorporates preferred embodiments or actual embodiments into the claim is a new argument. And I would like to address that. In particular, on JA1239 in our opposition brief to Dallas summary judgment motion, we did argue that the court's language. That's 1239? 1239, yes, Your Honor. That the court's language was basically restricting the claim to only actual embodiments. And that's why I was hoping to use this board. This board is the, can you hear me? Yes. This board are the two paragraphs. The upper paragraph is the one that we desire to have placed into the claim to find the term substituted federal group. The paragraph that follows in the specification explains what's going on up here as far as what the inventors knew as of the date of this filing. The original language of claim two has the words contains at least one substituent chosen from the group consisting of. Is A correct? One to 13 allergen items? This was explained in the brief, but this is actually a typographical error that occurs only in the 064 patent. But as luck would have it, we chose that patent to be the master specification. So it is an error that should be one to three. The other two patents that issue have the same specification, but the paragraph that I wrote is not there. Once again, I reproduced it to be accurate. So it is one to three, then? It is one to three. And that appears in the other two patents. What the court has done is the court has crossed out this language and has gone from the federal group consisting of. The language contains at least one substituent chosen from the group. That's correct. And this is also why I believe during my rebuttal I'll have ample opportunity to go into the remainder of the argument. But basically what we wanted was the word contains, which is an acknowledged transitional phrase. It's open-ended. A numerical term, at least one, and then followed by a traditional Marcuse group language. And to those of us who have been trained in claim drafting, you have an open-ended phrase followed by an element of a claim. That would indicate to us that at least one element of the Marcuse group, the Marcuse group itself, the entire Marcuse group, is a single element. As long as one of those elements is in the claim and something else, then it would. Excuse me, then. Why would you put the upper limit, then, one to three halogen atoms or one to two alcoholic groups, if that's the case? Exactly. It goes to this important area. The inventors, as of the filing of this specification, had tested many compounds. And they knew which ones did provide very good insecticides. And they knew, for example, one to three halogen atoms provided a good insecticide. So those are upper limits, right? Those are the upper limits. Three would be the upper limit, and two would be the upper limit. Because consisting of is a closing type of language which is used in claims. Marcuse group. Right. Substituent chosen from a group consisting of. What the contains does for us is it says you can have one to three halogen atoms, and that you can have at least one of these things, one to three halogen atoms, but at least one means that you could also have something from the other. You're arguing it'd have more weight if it had just said halogen atoms, not limiting it to one to three. Or if it said one to five. If it'd gone to the max. What you're trying to argue is the containing language contains, opens up what you would concede is otherwise closed, right? No. No? No. What I'm saying is that this is a Marcuse group. These are selections of desirable embodiments. You can have one to three halogen atoms. That's at least one of the selections. At least one would allow you more than one selection within here. So you're arguing both points together. One of the issues in the claim is whether or not the infringing item can simply have one thing from that list, or whether everything in it has to come from the list, right? That's the difference between open and closed-ended transitional phrases. Transitional phrase, Marcuse group, and then Marcuse is a single element. This is a single element. This transitional phrase contains all but a single element. So it's open-ended. Something, at least one thing from this Marcuse group has to be within the scope of contains, and then something else, something from outside. But the Marcuse group is closed. No. Well, the Marcuse group is alternative language. The Marcuse group was set up in chemical patent-wrapping so that you could... I understand how it was set up, but the way you're positing it is that A through K is a closed group. A through K is an alternative listing of preferred substituents that can be used in the R2 group. But you can't use five halogen atoms. You've got to use one to three halogen atoms. Within these preferred environments. No, these are listed preferred environments. So if I use five, then it wouldn't fall within the Marcuse group. You're outside of the recitation. Right. So you're outside, and you're totally outside of the claim. Not totally. The argument is that contains would allow you to go outside of this recitation, that you would be able to pick a substituent outside of this exact recitation. That's beginning to split hairs on claim construction, I thought we always split hairs on claim construction. Now, Mr. Grandaddy, you're into your... this was the hazard. You're into your rebuttal. I'm moving fast. Okay, so you want to save the rest for your rebuttal. I would like to do the... Do you want to sit down now? Because you're into your rebuttal. I'll use a little bit more time. Okay, because I don't want you to get caught short. You sure? Okay. I'll use a little more. Anyway, the second paragraph shows that the inventors at the time of this filing understood the recitation in column two to be actual embodiments of substituents that they tried on the R2 group. The second new issue that came up goes to venue. Dow is arguing two things, basically judicial economy and that hexafluoride is not part of this case and therefore does not trigger the 1994 agreement. We would like to point out that in the joint appendix, the record shows that the parties had a resolution as to money for this agreement in January of 1994, but that they were still discussing in May, June, and July the form selection clause. What page are you reading from? I'm looking at JA 0214, 0222, 0229, and 0235. And that the form selection clause, even though they had agreed to money, the form selection clause was very important to them. It was being discussed back and forth, very heated, by their attorneys, and it went over a period of seven months. That eventually Dow did concede the form selection clause. The argument that hexafluoride is not part of this case is negated by Dow's own complaint at JA 0091. Dow was asking that this court find that no DAS products infringe. In addition, the summary judgment motion that Dow filed was for non-infringement of hexafluoride also. So hexafluoride has been in this case from day one. It's always been part of the debate, but it's also been part of the discovery. Thank you. Are you finished now, Mr. Grandin? Because you're down to five minutes. I'm done. OK. Thank you. Mr. Neville? May it please the court. I'm going to respond only to what has been raised. The court concluded, as a result of a stipulation, that that, in fact, was the language of Claim 1. That was a stipulation that all of that would be part of Claim 1. The court concluded that the phrase contains at least one substituent group chosen from the group consisting of was ambiguous as a matter of the English language and went through the steps of trying to figure out then what it did mean. The judgment concluded that the word contains modifies at least one substituent and that the phrase chosen from the group consisting of was a closed group that had to be found within the group. So the substituents could be 1 to 5, which is the upper limit, but whatever substituents there were would have to be from this group. And one of the things she pointed to was any other conclusion would make the limits 1 to 3, 1 to 2 superfluous because you could have something beyond the group. But she didn't stop there. She found that there were no embodiments of any kind in the patent that did not meet one of these descriptions. And she also found out that the definition of a proviso that has almost identical language was being construed by Crompton in exactly the same way that was being construed by this agreement. Excuse me, by the Dow side. So the judge went through a very careful process, reconciled the language of what she thought was an ambiguous sentence, compared it to the disclosures, compared it to the recitations by the Crompton people about what a similar word of proviso meant, and concluded that's what it meant. There was no error in the judge's logic, no error in her application of this court's precedent. Well, your other side is in essence saying that the correct instruction should have been contains at least one substituent chosen from the group. Yes, and she considered that. She thought that was the alternative construction that made this ambiguous. And then she said, well, if that's true, then there could be substituents out there that have never been disclosed and would be unlimited, and no scientist could ever figure this out. She also determined as a part of that that everything that was disclosed in this patent, whether examples or suggestions, all was something that was a substituent within this list. So she went through that process. We believe it was correct. Now, I do want to then take up the question of transfer, which is if this court affirms, there's no transfer required anywhere. But the contract talks about disputes related to the contract. I guess I'll stop on that. If this court affirms, then the error in failing to transfer is harmless? I would assume so, because unless you want to vacate, but there's no sense that they've not asked for a vacation of the ruling based on the transfer. They've asked that the case be transferred. So if this court affirms... So if they ask for a vacation, it would be a different matter? I don't know. I don't know what the remedy is that goes this far in the process to a question of law before this court. If this court affirms a claim interpretation, which it does de novo, I don't think there is any error at that point because of the de novo review of this court. What if we affirmed in part and reversed in part? Would we send it back to the lower court or transfer it to Indiana? Well, it wouldn't make any sense as a matter of judicial economy to send it to a brand new court. But in any event, there's no basis for transfer. But it wouldn't make any sense. Your strongest point, I would think, is because we're conducting de novo claim interpretation once we say that if we say that the trial judge was correct, if we say the trial judge was wrong, then you're out of luck. If we say the trial judge was correct, then if the case is going to be transferred to some other district someplace, the other district is going to have to follow our claim. So they're going to get the same result. But the irony of this is that, as you saw in the brief, the way this agreement works, the things related to the agreement, which this dispute does not, is it says that it will be tried in the other person's hometown. So if this court were to vacate, Dow could simply say, we're going to stop. We won't do anything. We'll just let them sue us. And under their theory, if they sue us, it has to be in Indianapolis where it will be started from. Because the agreement says any suit has to be brought in the other person's hometown. So if the court were to— So if you yield your DJ rights and wait to be zapped— It's back in Indianapolis, just where it started. Back home again in Indiana? So the contract doesn't really apply to this. It applies to disputes arising under the agreement. There is no remand that we think would be possible to another court. It wasn't making any sense. But the case would end up back where we said anyway, because Dow would say, we don't have to have a DJ case here. Let them sue us. And they would have to sue us back in Indianapolis. So I have nothing further to say. Questions? Thank you, Mr. Neville. Mr. Grandinetti, you have just about five minutes left. Thank you. We cannot find any support for the court's position regarding contains. And this language about you can't make open-ended what is closed-ended, that doesn't make sense under the statute. And in particular, I'm talking about 35 U.S.C. 101. In claim drafting, you're only allowed to claim two things. You either claim some physical thing or process steps. When it comes to chemical claim drafting, you have to claim either atoms or you claim groups of atoms. This idea that we have a transitional phrase, which is internationally recognized as being open-ended, as represented by our patent office as being open-ended, to state that it somehow has an open-ended meaning as to number, but not to an element of the claim, makes no sense under the statute. Well, the statute is being applied, as I understand it, by the district court judge here in the light of the particular compounds that are being claimed. As I said earlier, if that list over there, A, had simply said halogen items or the maximum number of halogen items that can possibly be on the chain, and the same, too, with the outkill groups, you'd have a better argument. The trial judge, as I understand it, came to the conclusion that you couldn't have your way because it didn't make any sense to allow importation or tying on to the compound, say, for example, four halogen items. Let me address that if I may. That was part of the rationale of her opinion. That's her rationale, but she's using grammar instead of claim-drafting technique. When you're claim-drafting, you have a transitional phrase followed by elements. If you have an open-ended phrase, you have an element in the Marcouche group, and then you can add another element and still be within the scope of that transitional phrase. At page 20 in your brief, you talk about public policy considerations here because if we don't go your way on contains, the foundations of the patent republic will tremor. You point out that there's a problem with inartistically drafted patents, particularly those based on foreign-derived English translation. Is that what happened here? Was this patent originally written in Dutch, and then it was supposed to mean something other than contains or something that got translated? No, that particular argument goes to the syntax argument that she was using for the Alkoxie substituent. She was basically saying if you look at other substituents in the patent and the claims, quite often they'll say substituted or unsubstituted alkyl, and she's saying there's a pattern of syntax, therefore it should be applied to Alkoxie. That particular argument goes to the Alkoxie substituent. What I'm saying... Holland don't understand that to be a problem. Is that what you were saying? It seemed to me that her analysis on that aspect of the case was just traditional analysis of a specification going through and saying, well, whenever you mean something to be substituted, you say substituted, and when you don't, you don't. Well, there's two aspects to that. First of all, ample evidence was shown, including the Bayer case, that the term Alkoxie, as used by those of ordinary skill in the art, encompasses substituted and unsubstituted. It's a common practice, including Dr. Carr's article, to just use the word Alkoxie. For some reason, that's true. Dr. McNulty shows that some of these are defined terms, some are not. This would suggest to me that the folks in the Netherlands... I opened this line of questioning by raising it. It wasn't raised by the other side, so it wasn't properly subject to a rebuttal, so we probably ought to drop that line of discussion. But going back to the contains argument, by crossing out the transitional phrase, a numerical value, and the Marcouche language, what she's done is simply substituted a new transitional phrase, consisting of, which is not a transitional phrase as it's used necessarily in a Marcouche group. What she's done is substituted consisting of for the word contains, and at that point, she's restricting the R2 group to substitutions that can only come from the paragraph, and those, according to the next paragraph, are clearly actual embodiments. That's the argument for that. Any other questions? No. Thank you. The case is submitted, and that concludes today's hearing.